# Vaughan *v.* Marable.

*Bill in Equity for Cancellation of Mortgage, and Injunction of Sale under Power; Cross-Bill for Foreclosure.*

1. *Injunction of sale under power of sale in mortgage.*—A court of equity has undoubted jurisdiction to restrain, by injunction, the execution of a power of sale in a mortgage, or deed of trust; but this jurisdiction is exercised with great care and caution, and only when it is made to appear, by clear and precise allegations of distinct facts, that, by reason of fraud, or want or illegality of consideration, the collection of the debt is against good conscience, and the sale would work irreparable injury.

2. *Conveyance of wife's statutory separate estate.*—Lands, belonging to the statutory separate estate of a married woman, can only be conveyed by the deed of husband and wife, attested by two witnesses, or acknowledged and certified before and by some officer having authority to take and certify such acknowledgment.

3. *Entry by owner, upon lands illegally sold and conveyed; consideration of deed or mortgage.*—When lands, belonging to the statutory separate estate of a married woman, have been sold and conveyed by her husband only, or by a conveyance which was inoperative to pass her estate, she may at any time peaceably enter into the possession, by herself or her agent, whenever she can do so; and having regained the possession peaceably, and then sold and conveyed to a third person, who sold and conveyed by quit-claim to the original purchaser, putting him in possession, and taking a mortgage on the land to

[Vaughan v. Marable.]

secure the payment of the purchase-money, the mortgage is supported by a valid and adequate consideration.

4. *Maintenance; what constitutes.*—Maintenance is the officious intermeddling, by a third person, with a suit which in no wise concerns him, and in which he has no interest ; but it depends upon the question of intention and good faith, and not on the correctness of the party's opinion as to his interest in the suit : if he honestly believes that he has an interest, though in fact he has none, he may lawfully contract in reference to it.

5. *Foreclosure of mortgage in equity.*—A mortgagee may come into equity to foreclose his mortgage, although it contains a power of sale ; or he may file a cross-bill to foreclose, when the original bill seeks an injunction and cancellation.

APPEAL from the Chancery Court of Tallapoosa.

Heard before the Hon. N. S. GRAHAM.

The original bill in this case was filed on the 12th May, 1875, by Champion Marable, against James Vaughan and the administrators of the estate of Ichabod Phillips, deceased ; and sought to restrain by injunction the sale of certain lands, under a power of sale contained in a mortgage, which the complainant had executed to said Vaughan, and to have the mortgage declared void and cancelled, on the ground of maintenance, fraud, want of consideration, and illegality of consideration.

The mortgage, in which the complainant's wife joined with her husband, was dated the 23d February, 1871, and purported on its face to be given " to secure the said James Vaughan, in the prompt and full payment of a promissory note for the sum of $400, executed by Champion Marable and George T. Craddock, to said James Vaughan and Ichabod Phillips, on the 7th day of April, 1870, and payable on the 25th December, 1870, with interest from date ; and also to secure the said James Vaughan in the full payment of certain costs, charges, and expenses, which may accrue upon a certain litigation hereafter more especially set forth in this mortgage ;" afterwards more particularly described, thus : " Whereas, the said James Vaughan and Ichabod Phillips, deceased, became the purchasers of said aforegranted lands, from Mrs. Sarah Smith, in the sum of $400, evidenced by their promissory note made the 31st day of December, 1869, and due and payable on the 1st day of January, 1871 ; and whereas, the said C. Marable, prior to said sale to Vaughan & Phillips, claimed one undivided half interest in said lands, by purchase from said Mrs. Sarah Smith ; and whereas, the said Marable, since the purchase of said lands by said Vaughan & Phillips, has purchased of them their interest in and to said lands, for which he and said George T. Craddock gave their said note, which is set out and secured in the first part of this mortgage ; and the said Marable being desirous of litigating with one Allen Thomas, the trans-

[Vaughan v. Marable.]

ferree of said note executed by Vaughan & Phillips to Mrs. Sarah Smith, his claim or right as transferree to recover on said note ; which said litigation, and all costs and damages, though done in the name of said Vaughan, shall be done at the expense of the said Marable: Now, if the said Marable shall successfully defend the said note now in the hands of said Allen Thomas, and save the said Vaughan harmless from all costs and damages which may result to him (Vaughan) by reason of said litigation, or, in the event a judgment shall be recovered on said note in the Circuit Court of Tallapoosa county, shall, within thirty days after the adjournment of said court, pay off and discharge said judgment, and all costs and damages ; then, and in that event, this mortgage to be null and void, and the same shall be satisfied by the said Vaughan, and the note executed to him by said Marable and Craddock, which is secured by this mortgage, shall be returned to said Marable," &c. ; but, in the event Marable failed to defend the suit, or to pay off any judgment that might be rendered in it against Vaughan, within thirty days after the adjournment of the court, then the mortgagee was authorized to take possession of the land, and to sell after ten days' notice.

The facts alleged in the bill, on which the complainant asked equitable relief against this mortgage, were these : On the 1st April, 1867, he bought at sheriff's sale, under execution against one W. M. A. Mitchell, an undivided half interest in said lands, on which a saw- and grist-mill was situated, and received the sheriff's deed ; and he went into possession of the property under his purchase, and continued in the peaceable possession thereof until on or about the 31st December, 1869, when said Vaughan and Phillips, having purchased the property from Mrs. Sarah Smith, "jointly took forcible possession of the entirety of said mills, together with the fixtures, and a quantity of lumber which was in the yard." Vaughan and Phillips continued in possession of the lands and mill until the 7th April, 1870, when they sold and conveyed the entire property to complainant, who paid them $400 in cash, and gave them his note for $400, with Craddock as his surety, which is the note secured by the mortgage ; and the bill alleged that "he was forced to make this trade, to get his right to the one undivided half interest in said property, which said Vaughan and Phillips had forcibly taken from him." At the time this contract was made, it was agreed between complainant and said Vaughan and Phillips, "that he should have the privilege of litigating with said Sarah Smith and the heirs of her deceased husband, Simeon L. Smith, the collection of the note made by Vaughan and

[Vaughan v. Marable.]

Phillips, payable to her or bearer;" and on the 23d January, 1871, suit having been brought on said note by one Thomas, the said mortgage was executed, containing the stipulations above shown, which the complainant insisted was illegal, champertous, and void. The bill alleged, also, that Vaughan had violated the stipulations of the contract on his part, by paying off a judgment which had been rendered against him in the suit on the note, amounting to $400 or more, without allowing complainant an opportunity to carry the case to the Supreme Court by appeal, where, as he was advised by counsel, he could have reversed the judgment; also, that said Vaughan and Phillips "practiced a fraud on him, by purchasing the entirety of said property from said Sarah Smith, when they well knew at the time that he was the owner of an undivided half interest therein, and was in the possession of the same."

Vaughan alone defended the suit, a decree *pro confesso* having been entered against the personal representatives of Phillips. He admitted the execution and contents of the deed, notes, and mortgage, as shown by the exhibits to the bill; but denied that there was any fraud, imposition, or illegality of consideration, in any of the transactions with complainant. Denied, also, that complainant acquired any interest in the lands by his purchase at the execution sale against Mitchell, and that he was in possession of any part of the lands, or of any interest therein, at the time Vaughan and Phillips sold and conveyed to him. As to these matters, he alleged that said Mitchell claimed an interest in the lands under a conveyance from said Simeon L. Smith, since deceased, which, if Mrs. Sarah Smith, his wife, joined in it, was nevertheless inoperative to convey any interest in the lands, because it was not attested by two subscribing witnesses, nor acknowledged and certified as required by law, and the lands belonged to the statutory separate estate of Mrs. Smith; and that Mrs. Smith, after the death of her husband, was in the peaceable possession of the lands when she sold and conveyed to Vaughan and Phillips. He alleged, also, that the mortgage was no part of the original contract between complainant and Vaughan and Phillips, for the sale and purchase of the lands, but was executed subsequently, as shown by its date, to secure the payment of the complainant's note, and to enable him to litigate with Thomas the suit against Vaughan on the other note. He admitted that he had paid the judgment rendered against him in that suit, after the expiration of thirty days, and insisted that the mortgage gave him the right to do so; and also admitted that he was proceeding to foreclose the mortgage by a sale

[Vaughan v. Marable.]

under the power therein contained. He demurred to the bill, for want of equity, and afterwards moved to dissolve the injunction, as well for want of equity in the bill, as on the denials of the answer. The chancellor overruled the demurrer and the motion, but gave the respondent leave to file a cross-bill; and a cross-bill was afterwards filed by Vaughan, asking a foreclosure of the mortgage.

On final hearing, on pleadings and proof, the chancellor rendered a decree for the complainant; holding the mortgage to be champertous, contrary to public policy, illegal and void, and ordering its cancellation; and he dismissed the cross-bill. The decree on the original bill, and the dismissal of the cross-bill, are now assigned as error.

D. CLOPTON, for appellant.—1. There is nothing champertous, or tainted with maintenance, in the contract shown by the mortgage. To constitute maintenance, the intermeddling must be officious and unlawful—must be "in a suit that in no way belongs to one, to the disturbance, or hindrance of common right."—*Thompson v. Marshall*, 26 Ala. 512; *McCall v. Capehart & Harbin*, 20 Ala. 512–26. The question is one of honest belief and intention, and not whether Marable could or could not successfully defend the suit against Vaughan, on the law and the facts. If the contract were champertous, Marable could not ask relief against it; since, where parties are *in pari delicto*, the courts will not interfere between them.—*Black & Manning v. Oliver*, 1 Ala. 449. For this reason, the injunction ought not to have been made perpetual.—*Tracy v. Talmadge*, 15 N. Y. 162, 181. Moreover, the mortgage was upon two distinct considerations; and even if one of them be held champertous and illegal, this would not affect the validity of the mortgage as a security for Marable's note. Where a contract contains independent and severable stipulations, and a part be rejected as illegal, the legal part shall stand and be enforced.—*Carleton v. Woods*, 28 N. H. 290; *Robinson v. Green*, 3 Metc. Mass. 159; *Curtis v. Leavitt*, 15 N. Y. 96; *Anderson v. Hooks*, 8 Ala. 704–19. For this reason, if no other, the cross-bill should have been sustained, and the mortgage foreclosed.

W. D. BULGER, contra.—The depositions of the complainant and Norris, and the exhibits, show that Marable owned an undivided half interest in the lands when Vaughan and Phillips sold to him, and that they forcibly ejected him when they bought from Mrs. Smith, and were trespassers when they sold to him. These facts being proved, the note secured by the mortgage was without consideration, being given for

Marable's own property, which they ought to have surren-
dered to him without compensation or reward.—*McCall v.
Capehart & Harbin*, 20 Ala. 521 ; *McCaleb v. Price*, 12 Ala. 753.
The maker of a note may set up the want of consideration,
though he executed it with full knowledge of the facts.—*Holt
v. Robinson*, 21 Ala. 106. The mortgage itself sets out the
champertous contract, on which it is based.—*Holloway v.
Lowe*, 7 Porter, 488 ; *Wheeler v. Pounds*, 24 Ala. 472 ; 5 Johns.
Ch. 144.

BRICKELL, C. J.—Courts of equity will interfere by
injunction to restrain the execution of a power of sale in a
mortgage or deed of trust. The jurisdiction is, however,
exercised with great care and caution, and only when by
clear, precise allegations of distinct facts, it is made to appear
that, by reason of fraud, or want or illegality of considera-
tion, the collection of the debt is against good conscience,
and the sale would work irreparable injury.—2 Jones Mort.
§§ 1804–07 ; High on Inj. §§ 309–12.

The mortgage, in the present case, is framed and intended
to secure a pre-existing debt, due by promissory note made
by the mortgagor, and the performance of a contemporane-
ous agreement by which the mortgagor assumed to defend a
suit commenced by one Thomas against the mortgagee, and
to pay and satisfy any judgment which might be rendered
therein against the mortgagee. The validity of the promis-
sory note is assailed, because of duress and fraud in obtain-
ing it, and for want of consideration. The consideration was
the purchase-money of lands, which the payee had bargained
and sold, and by quit-claim conveyed to the mortgagor. The
facts are, in substance, that the lands were the statutory
separate estate of a married woman, Mrs. Smith, from whom
and her husband one Mitchell had purchased, or asserted
he had purchased, an undivided half interest therein. Un-
der such claim, he was in possession ; and an execution,
issuing on a judgment against him, was levied on the lands,
and a sale made by the sheriff, at which the mortgagor be-
came the purchaser, entering into possession. There is some
doubt whether the conveyance to Mitchell was executed by
the wife, or by her authority. It is produced ; purports to
bear her signature ; is attested by but one witness, and not
acknowledged before any officer having authority to take and
certify her acknowledgment. The mortgagor remained in
possession for some time, claiming only an undivided half
interest, when possession was taken peaceably, not violently
(as is alleged in the bill), by a son of Mrs. Smith. The mort-
gagor then commenced negotiations for a purchase of the

[Vaughan v. Marable.]

lands from Mrs. Smith, who had become discovert. These negotiations were unsuccessful, and Mrs. Smith made a sale and conveyance of the lands to the appellant and one Phillips, who subsequently sold and conveyed to the appellee, taking the promissory note secured by the mortgage for the purchase-money.

2-3. If it could be admitted that the conveyance to Mitchell was signed by Mrs. Smith, it is apparent that it is invalid and inoperative, not passing her estate. The statutory separate estate of a married woman, in lands, can not be conveyed by deed, or other instrument, unless it is attested by two witnesses, or acknowledged and certified by some one of the officers having authority to take and certify her acknowledgment. If, under a conveyance not attested or acknowledged, possession of the lands is taken, the possession is wrongful. Mitchell had no interest or estate in the lands, which was the subject of levy and sale under execution; and none was acquired by the appellee, by his purchase at the sale by the sheriff. Without any right the appellee having entered into possession, it was the right of Mrs. Smith to enter, by herself or her agents, whenever she could, peaceably, without force or violence. Having entered, the sale and conveyance to the appellant was rightful, furnishing to the appellee no just cause of complaint. With full knowledge of all the facts, without duress or fraud, the appellee purchased from the appellant and Phillips, entered into and has remained in undisturbed possession, accepting from them a quit-claim conveyance. There can be no doubt of the adequacy of the consideration of the note. Nor is there any room for the pretense that he was in fact purchasing his own property. As we have seen, he had no estate in the lands— acquired none by the purchase at sheriff's sale, and was in effect, while in possession, a trespasser.

4. Contracts for the maintenance of suits, or for champerty, are void. A mortgage, given as a security for the performance of such a contract, being founded on an illegal consideration, and contravening public policy, a court of equity will interfere and restrain the mortgagee from executing a power of sale it may contain.— *Gilbert v. H lmes*, 64 Ill. 548. Maintenance is defined by Blackstone, as " an officious intermeddling in a suit that no way belongs to one, by maintaining or assisting either party, with money or otherwise, to prosecute or defend it."—4 Black. 134. In *Finden v. Parker*, 11 Mees. & Wels. 682, Lord ABINGER said: " The law of maintenance, as I understand it, upon the modern constructions, is confined to cases where a man improperly, and for the purpose of stirring up litigation and strife, encourages

[Vaughan v. Marable.]

others to bring actions, or to make defenses, which they have no right to make." And in *Thompson v. Marshall*, 36 Ala. 512, it is said : " The gist of the offense is, that the intermeddling is *unlawful ;* that it is *officious*, and in a suit which no way belongs to the intermeddler." The offense rests in intention, and no intermeddling in suits is regarded as *officious*, and falling within it, if a party, under an honest, though mistaken belief, that he has an interest, interferes for its protection, and not for the purpose of fomenting litigation.—*McCall v. Capehart*, 20 Ala. 526 ; 1 Story on Con. § 579. The essential element of the offense—the intent to stir up strife, the officious intermeddling in a suit in which there was not an honest belief of an interest—is absent from this transaction. However mistaken he may have been, it is certain the appellee was under the honest belief that he, by his purchase at sheriff's sale, had acquired an undivided half interest in the lands, and that, of consequence, to that extent there was a want of consideration for the note on which the appellee was sued by Thomas. If, on that ground, successful defense was made to that suit, it would relieve him from liability on the note given to the appellee and Phillips. It is the good faith of the parties, not the correctness of their opinions, which must be considered in determining whether their contracts are to be defeated for maintenance. They are not to be defeated, when made between persons who have an interest absolute, certain, or contingent, or who honestly believe that they have such interest. It is not *officious*, or *unlawful*, for them to assist in the prosecution or defense of suits involving such interest.—2 Story's Eq. § 1048. The contract by which the appellee bound himself to indemnify the appellant against the costs and expenses of the suit by Thomas against him, was not void for maintenance. It results that there is not shown any cause for enjoining the appellant from executing the power of sale in the mortgage.

5.   A mortgagee, though clothed with a power of sale, may proceed in equity for a foreclosure ; and there are many good reasons why he should have a foreclosure by a decree of the court, rather than by an exercise of the power.—2 Brick. Dig. 259, § 147. The mortgage being a valid security for a just debt, and the performance of a legal contract, the cross-bill should not have been dismissed, but a decree of foreclosure ought to have been rendered.

The decree of the chancellor must be reversed, and a decree here rendered in conformity to this opinion.